# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHAWN McCOY,** | **:** | |
| **Plaintiff** | **:** | **CIVIL ACTION NO. 1:11-1673** |
| **v.** | **:** | **(CALDWELL, D.J.)** |
| | | **(MANNION, M.J.)** |
| **Warden BRYAN BLEDSOE;** | **:** | |
| **BRAD TRATE; JOSHUA** | | |
| **TREIBLEY; BEVERLY PRINCE** | **:** | |
| **and HEATHER MIOSI,** | | |
| | **:** | |
| **Defendants** | | |
| | **:** | |

## REPORT AND RECOMMENDATION[1]

Presently before the court is the defendants' motion to dismiss and/or, in the alternative, for summary judgement. (Doc. No. 25). The plaintiff, currently an inmate at the United States Prison in Lewisburg, Pennsylvania (hereinafter "USP-Lewisburg") filed a complaint, (Doc. No. 1), alleging that he was placed in excessively tight ambulatory restraints and was forced to sleep on the floor in a cell with an open window which made the cell intolerably cold. Finding that the plaintiff's allegations do not rise to the level of Eight

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

Amendment violations either individually or when viewed in the totality of the circumstances, the court recommends that the motion be **GRANTED**.

I.    **FACTUAL BACKGROUND**[2]

The plaintiff is currently serving a 276-month sentence at USP-Lewisburg for murder and drug-related charges. (Doc. No. 29 at 2). During the course of his federal incarceration, the plaintiff has developed a lengthy discipline record including assault, refusing to obey orders and disruptive conduct. (Id. at 2-3).

On January 25, 2011, Defendant Treibley, a corrections officer, ordered the plaintiff to submit to hand restraints so that another inmate could be put in the plaintiff's cell. (Id. at 3). The plaintiff refused. (Id.). The plaintiff asserts that he recognized the proposed cell mate as a member of a gang that the plaintiff had left and was therefore concerned about possible retribution. (Doc. No. 39 at 1). Regardless of the reason, the defendants assert that plaintiff stated "I will kill him. I will kill anyone you put in here. I will kill you." (Doc. No. 29 at 3). The plaintiff denies that he threatened to kill anyone. (Doc. No. 39 at 2). Defendant Treibley subsequently issued the plaintiff an incident report

---

[2] Pursuant to Local Rule 56, the defendants submitted a statement of material facts, (Doc. No. 29). The plaintiff submitted a counter-statement of facts, (Doc. No. 39).

for threatening, refusing program and refusing an order. (Doc. No. 29 at 3). On May 9, 2011, a Discipline Hearing Officer determined that the plaintiff had indeed committed the charged offenses. (Id.).

After the plaintiff's refusal to accept the cell mate, Warden Bledsoe authorized a use of force team to place the plaintiff in ambulatory restraints. (Id. at 4). The plaintiff cannot take OC spray, therefore the use of force team was authorized to use a stun gun if necessary; however, as demonstrated in the use of force video under seal with the court, the plaintiff complied with the team and no force was necessary. (Id. at 5-6; Doc. No. 28). As part of the use of force team Defendant Heather Ladisic (Miosi), a registered nurse, was charged with treating any injuries to the plaintiff and ensuring proper circulation once the restraints were applied. (Doc. No. 28). As evident in the video, Defendant Miosi examined the plaintiff, who did not audibly voice any complaints, and found no injuries and proper circulation. (Doc. No. 28). The plaintiff was strip searched and moved to another cell without incident. (Doc. No. 28). The video shows that the plaintiff was placed on the lower bunk of the unoccupied new cell and provided a blanket. (Doc. No. 28). The video also shows that the window in the cell was closed. (Doc. No. 28). The plaintiff alleges that there was another inmate in the cell who occupied the bottom

bunk and therefore the plaintiff was forced to sleep on the floor. (Doc. No. 39 at 3-4). In addition, the plaintiff alleges that he was not given a blanket and that the window in the cell was "left wide open to freeze [the plaintiff]." (Doc. No. 38 at 4).

Over the course of the plaintiff's six-day confinement, prison personnel checked the plaintiff's restraints every fifteen minutes and recorded their observations on a Fifteen-Minute Restraints Check Form pursuant to BOP policy. (Doc. No. 29 at 11; Doc. No. 29 Ex. 3 Att. D). In addition, every two hours a lieutenant must review an inmate in ambulatory restraints's conduct and demeanor to determine when they have regained self-control and can be released from the restraints. (Id. at 13). The plaintiff was checked by a lieutenant every two hours and the lieutenants' observations were recorded on a Two-Hour Lieutenant Restraints Check Form. (Id.; Doc. No. 29 Ex. 3 Att. E). Additionally, twice during each eight-hour shift, health services staff evaluate any inmate in ambulatory restraints and record their findings on a Health Services Restraint Review Form. (Doc. No. 29 at 25-26; Doc. No. 29 Ex. 3 Att. G). Finally, once every twenty-four hours a member of Psychology Services is required to perform, and did perform, an evaluation of any inmate in ambulatory restraints and record their assessment on a Psychology

Services Restraint Review Form. (Doc. No. 29 at 23; Doc. No. 29) Ex. 3 Att. F). It is important to note that checks were performed by several different prison staff members, some named as defendants in this action and others who are not.

The various restraint check logs include numerous vulgar and hostile comments allegedly made by the plaintiff toward prison staff; however, most importantly they indicate that no prison personnel heard the plaintiff verbalize any medical complaints, found him to be in pain or noted any injuries from the restraints. (Id. at 12-22). The plaintiff alleges that he made no hostile or vulgar comments, but rather told prison staff that he was in pain from the restraints that were too tight and that he was cold from the window being open, only to be ignored. (Doc. No. 39 at 4-8). In addition to medically relevant information, the log entries reflect observations of the plaintiff sitting on the bed as well as the floor. (Doc. No. 29 at 12). The plaintiff was released from the ambulatory restraints on January 31, 2011. (Id. at 35). On February 2, 2011, the plaintiff complained to Warden Bledsoe about his treatment and showed the Warden the injuries he had sustained. (Doc. No. 39 at 9). The Warden subsequently instructed a member of the medical staff to examine the plaintiff. (Id.). The staff member reported "areas of mild erythema noted on both wrists/ankles"

5

and gave the plaintiff bacitracin ointment to apply. (Doc. No. 29 at 35).

## II.   PROCEDURAL HISTORY

The plaintiff filed his complaint on September 6, 2011, (Doc. No. 1). On

December 2, 2011, the defendants filed the instant motion to dismiss and/or,

in the alternative for summary judgment, (Doc. No. 25). On December 16,

2011, the defendants filed a statement of material facts, (Doc. No. 29), and

brief in support, (Doc. No. 30). On January 6, 2012, the plaintiff filed his brief

in opposition, (Doc. No. 38), counter-statement of material facts, (Doc. No.

39), and an exhibit in support of his brief, (Doc. No. 40). On January 23, 2012,

the defendants filed a brief in reply, (Doc. No. 42).

## III.   STANDARD OF REVIEW

As an initial matter, it is important to note that this court is required to

liberally construe a pro se plaintiff's pleadings; "however inartfully pleaded,"

the "allegations of [a] pro se complaint [are held] to less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519,

520 (1972). In doing so, the court is to "apply the applicable law irrespective

of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293

F.3d 683, 687 (3d Cir. 2002). Nevertheless, a court need not credit a plaintiff's

"bald assertions" or "legal conclusions." *Morse v. Lower Merion Sch. Dist.*,

6

132 F.3d 902, 906 (3d Cir.1997).

### A. Rule 12(b)(6) Standard of Review

The defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of "necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

7

will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir.2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994).

**B. Summary Judgment Under Rule 56 (c) Standard of Review**

The defendants have moved for summary judgment pursuant to Rule

56(c) of the Federal Rules of Civil Procedure. Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir.1990); *In re Cargill Meat Solutions Wage and Hour Litigation*, 632 F.Supp.2d 368, 372 (M.D.Pa.2008). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Jiminez v. All American Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir.2007). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir.2004). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir.2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323-24. The moving party can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir.2003); *see also Celotex*, 477 U.S. at 325.  If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor.  *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir.1998) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir.2007).

## IV.   DISCUSSION

The Eighth Amendment imposes duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970 (1994) (*quoting Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200 (1984)). To be sure, however, "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981).

To present a sufficient Eighth Amendment claim related to the conditions of confinement, an inmate-plaintiff must allege: (1) that the deprivation is sufficiently serious; and (2) that the defendant was deliberately indifferent to this deprivation. *See Young v. Quinlan*, 960 F.2d 351, 359–60 (3d Cir.1992) (*citing Wilson v. Seiter*, 501 U.S. 294, 298–303, 111 S.Ct. 2321, 2323–2326 (1991)); *Tsosie v. Dunbar*, 2102 WL 1191642, *7 (M.D.Pa. April 10, 2012). The Supreme Court has explained that the first prong is objective, while the second prong is subjective. *Wilson*, 501 U.S. at 298, 111 S.Ct. at 2324. Moreover, the inmate-plaintiff must satisfy both prongs of the test; therefore, a prison official's conduct will not constitute deliberate indifference without evidence of the requisite mental state. *See Farmer*, 511 U.S. at

837–38, 114 S.Ct. at 1979; Tsosie, 2012 WL 1191642 at *7.

Only extreme deprivations will satisfy the objective first component of an Eighth Amendment claim. *See Helling v. McKinney*, 509 U.S. 25, 36, 113 S.Ct. 2475, 2482 (1993); *Hudson v. McMillian*, 503 U.S. 1, 8–9, 112 S.Ct. at 995, 999–1000 (1992). When examining conditions of confinement cases, courts will examine the "totality of the circumstances," not just the allegedly egregious conditions individually, to determine the extent of the deprivation. *Id.* at 362–33, 101 S.Ct. at 2407.

As for the second component of an Eighth Amendment claim, the subjective question is whether the defendant acted with deliberate indifference to the inmate's health or safety. *See Hudson*, 503 U.S. at 8, 112 S.Ct. at 999. To be deliberately indifferent, a prison official must know of, and disregard, an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. 837–38, 114 S.Ct. at 1979. Deliberate indifference can also be shown by a prison official "intentionally denying or delaying access to medical care or intentionally interfering with [medical] treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291 (1976).

Considering the pleading requirements necessary to sustain an Eighth Amendment clam, the court will look at each of three deprivations alleged by

the plaintiff as well as the circumstances as a whole. Though the plaintiff does not divide his complaint into separate counts; the court recognizes possible claims related to (1) the use of ill-fitting ambulatory restraints; (2) the failure to provide bedding; and (2) the subjection of the plaintiff to cold temperatures.

### A. Ambulatory Restraints

The plaintiff claims that the ambulatory restraints were too tight and that he complained to prison staff that he was in pain. (Doc. No. 1 at 3-6). Nevertheless, the use of force video clearly shows that the plaintiff did not verbalize any discomfort when the restraints were initially applied and that Nurse Moisi's examination found that the restraints did not effect his circulation. (Doc. No. 29 at 7). In addition, restraint checks were performed approximately every fifteen minutes, two hours and four hours by various levels of prison staff from different prison and health services departments. (Doc. No. 29). Moreover, the staff members that performed the checks comprise both named defendants and non-parties to this action. The logs of these checks uniformly relay that the plaintiff did not verbalize complaints of pain and that his vital signs were normal and no injuries were visible. (Doc. No. 29). This evidence from the record strongly controverts the plaintiff's unsupported allegations that he complained regularly to prison staff. Even

more important, the logs demonstrate that no serious medical conditions developed and that prison officials regularly checked the plaintiff's condition and therefore never disregarded any serious risks to the plaintiff. Failure to show either a serious deprivation or deliberate disregard would be a critical failure to an Eighth Amendment claim; therefore finding neither occurred with regard to the application of the ambulatory restraints, no reasonable jury could find that the application of the restraints alone could have risen to the level of an Eighth Amendment violation.

## B. Sleeping on the Floor

The plaintiff claims that there was another inmate in his cell who occupied the bottom bunk. (Doc. No. 39 at 3-5). Unable to get up to the top bunk with his restraints, the plaintiff was forced to sleep on the ground for six nights. (Id.). The use of force video clearly shows that no other inmate was present at least when the plaintiff first entered the cell and that the plaintiff was placed on the bottom bunk. (Doc. No. 29 at 9; Doc. No. 28). The plaintiff points to comments he made which were recorded in the various restraint check logs such as "[y]ou just making an example of me and this dude," (Doc. No. 39 at 5; Doc. No. 29 at 15), and "[d]idn't you hear what my man just said?" (Doc. No, 39 at 5; Doc. No. 29 at 17), as evidence that someone else was

indeed in the cell with him. The court notes that the plaintiff simultaneously alleges that every other comment attributed to the plaintiff in the logs was incorrectly or falsely recorded. Ultimately, however, any question that may exist as to whether the plaintiff had a cell mate and was therefore force to sleep on the floor is irrelevant as failure to provide bedding is not a cognizable claim under the Eighth Amendment. In *Adderly v. Ferrier*, 419 F. App'x 135, 139–140 (3d Cir.2011), the Third Circuit found that denial of clothing, toiletries, legal mail, mattress and shower for seven days did not constitute Eighth Amendment violation. The Third Circuit noted that "[a]lthough the deprivations [the inmate-plaintiff] allegedly suffered during those periods of confinement may have been harsh, they do not constitute a denial of the minimal civilized measures of life's necessities." *Adderly*, 419 Fed.Appx at 140 (internal quotation marks omitted).

Similarly, courts in the Middle District of Pennsylvania have found that denial of bedding for a short period of time does not rise to the level of an Eighth Amendment violation. *See Milhouse v. Gee*, 2011 WL 3627414, * 13 (M.D.Pa. Aug.17, 2011) (two week denial of mattress was not sufficiently serious to rise to the level of an Eighth Amendment violation). Therefore, even if the plaintiff was, as he alleges, forced to sleep on the floor for six nights,

such discomfort is not the type of sufficiently serious deprivation envisioned by the Eight Amendment. As such, no reasonable jury could find that the plaintiff's denial of bedding alone violated the Eighth Amendment.

### C. Cold Temperatures

The plaintiff also claims that he was subjected to unreasonably cold temperatures because the window in his cell was wide open, he was only wearing a t-shirt, boxer shorts and socks, and he was not provided a blanket. (Doc. No. 39 at 6). The use of force video clearly shows that the plaintiff was indeed dressed in a t-shirt, boxer shorts and socks, but also that the widow was closed when the plaintiff entered the cell and that he was provided a blanket. (Doc. No. 29 at 9; Doc. No. 28). The restraint check logs indicate the plaintiff was observed yelling out the window on at least one occasion. (Doc. No. 29 at 12). Evidence indicating that the widow was both open and closed during the six-day period demonstrates that the widow was not broken or otherwise forced open beyond the plaintiff's control. Finding that the window was capable of being opened and closed and that the plaintiff was provided a blanket, any discomfort the plaintiff felt from the cold winter temperatures does not rise to the sufficiently serious level required by the Eighth Amendment.

### D. Totality of the Circumstances

Finally, though the court has found that none of the individual deprivations rise to the level of Eighth Amendment violations, the court must examine the totality of the circumstance to determine whether the conditions as a whole may have violated the plaintiffs rights. The court finds that they did not. Warden Bledsoe authorized the use of force after the plaintiff refused to take a new cell mate. The use of force team carried out the application of ambulatory restraints and cell transfer without incident. While in restraints, the plaintiff was continually checked by a variety of prison personnel specifically to ensure that no medical risks developed or he was not properly cared for. Even after the period in the restraints, the plaintiff personally requested a medical exam from the Warden to which medical staff quickly attended and ultimately found bacitracin ointment the only care necessary. The plaintiff did not plead any injuries individually linked to sleeping on the floor or the cold temperatures resulting from the allegedly open window, making his wrist and ankle injuries the only physical trauma of the alleged deprivation. Therefore, the court finds that no reasonable jury could examine the totality of the circumstances and find either a serious deprivation occurred or that the defendants were deliberately indifferent to any risks of harm to the plaintiff.

17

**THEREFORE, THE COURT RECOMMENDS, THAT**:

The defendants' motion to dismiss and/or, in the alternative, for summary judgment, (Doc. No. 25), be **GRANTED**.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**


**Date: August 16, 2012**
O:\shared\REPORTS\2011 Reports\11-1673-01.wpd